UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

DOUGLAS ANDREW BAIETT,

        Plaintiff,

v.                                                                                   Civ. No. 16-467 GJF

NANCY A. BERRYHILL, *Acting Commissioner of the Social Security Administration*,

        Defendant.

## **ORDER**

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse or Remand the Administrative Decision" [ECF No. 19] and "Memorandum Brief in Support of Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision" [ECF No. 18] (collectively, "Motion"),[1] filed on February 9, 2017. The Commissioner responded on April 28, 2017. ECF No. 21. Plaintiff replied on May 8, 2017. ECF No. 22. Having meticulously reviewed the briefing and the entire record, the Court concludes that Plaintiff's Motion is well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **REVERSED** and **REMANDED**. Therefore, and for the further reasons articulated below, the Court will **GRANT** Plaintiff's Motion.

## I.  BACKGROUND

Plaintiff was born on January 31, 1962. Administrative R. ("AR") 32. He graduated from high school and attended one year of college. AR 46. Plaintiff then was a journeyman electrician for almost thirty-five (35) years. AR 46.

---

[1] Here, the Court refers to Plaintiff's Motion to Remand and Memorandum Brief collectively as a Motion, but subsequent citations to Plaintiff's Motion shall refer to the text of Plaintiff's Memorandum Brief.

1

Plaintiff filed an application for Social Security Disability Insurance ("SSDI") on February 21, 2015 [AR 22], alleging disability beginning on February 20, 2015 [AR 46-47], due to stage three prostate cancer (adenocarcinoma), arthritis of both knees, high blood pressure and cholesterol, and obesity [AR 75]. The Social Security Administration ("SSA") denied Plaintiff's claim on June 15, 2015, and again upon reconsideration on August 19, 2015. AR 22. Plaintiff then requested a *de novo* hearing, which occurred on January 19, 2016, in Albuquerque, New Mexico, before Administrative Law Judge ("ALJ") Lillian Richter. AR 22, 34. Plaintiff and Pamela Bowman, a vocational expert ("VE"), testified during the hearing. AR 22.

On February 16, 2016, the ALJ issued her decision that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"), from February 20, 2015, through the date of her decision. AR 33-34. On March 8, 2016, Plaintiff requested that the Appeals Council review the ALJ's decision, which was denied on May 5, 2016. AR 1-4. As a consequence, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2017).

Plaintiff timely filed his appeal in this Court on May 23, 2016. ECF No. 1.

## II. PLAINTIFF'S CLAIMS

On appeal, Plaintiff raises three issues. First, Plaintiff contends that the ALJ failed to comply with 20 C.F.R. § 404.1527 by failing to accord controlling weight to the opinion of the claimant's treating physicians. Pl.'s Mot. 9, ECF No. 18. Second, Plaintiff argues that the ALJ erred at step five by propounding and relying upon the response to a hypothetical question that did not include all of Plaintiff's severe limitations. *Id.* Last, Plaintiff asserts that the ALJ erred in failing to find Claimant disabled as a matter of law because even if he was able to perform a full range of sedentary work, he would still be disabled under the GRID regulations. Pl.'s Mot. at 9, 21.

2

## III. APPLICABLE LAW

### A. Standard of review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[2] The Court's review of that final agency decision is both factual and legal. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.")

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981 (2017); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B.     Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4) (2012). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4); Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's RFC. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to determine if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f). If a claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R. §§ 404.1520(f). The claimant bears the burden of proof on the question of disability for the first four steps. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to his past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing

in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

IV. **THE ALJ'S DECISION**

The ALJ issued her decision on February 16, 2016. AR 34. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 20, 2015, the amended alleged disability onset date. AR 24. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative joint disease of the bilateral knees, right knee meniscus tear, obesity, hypertension, malignant tumor of the prostate, post-prostatectomy, and incontinence. AR 24.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 24. The ALJ found that "the medical evidence fails to show that the degenerative joint disease of [Plaintiff's] bilateral knees and/or his right knee meniscus tear have resulted in an inability to ambulate effectively," and thus Plaintiff's impairments did not meet or medically equal 1.02A[3] of the listings. AR 25. The ALJ also noted that the medical evidence did not show that Plaintiff had an impairment in each of his upper extremities, and thus Plaintiff failed to meet the requirements of section 1.02B[4] of the listings. AR 25. Additionally, the ALJ

---

[3] Listing 1.02A is the "[m]ajor dysfunction of a joint(s)" due to any cause which is characterized by the following: "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]" 20 C.F.R. § Pt. 404, Subpt. P, App. 1, part A1, § 1.02A.

[4] Listing 1.02B is defined the same as Listing 1.02A, except that the major dysfunction of the joint is accompanied by the "[i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c[.]" 20 C.F.R. § Pt. 404, Subpt. P, App. 1, part A1, § 1.02B.

determined that the medical evidence did not show that Plaintiff suffered from any of the conditions enumerated within section 14.09 of the listings.[5] AR 25. The ALJ did not consider whether Plaintiff's remaining severe impairments, other than those concerning his knees, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 24-25.

Because none of Plaintiff's impairments satisfied an applicable Listing, the ALJ moved on to step four and assessed Plaintiff's RFC. AR 26-32. The ALJ found that Plaintiff had the RFC to:

> perform light work as defined in 20 C.F.R. § 404.1567(b). [Plaintiff] can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand [and/or] walk for six hours in an eight-hour day; and sit for six hours in an eight-hour day. [Plaintiff] can occasionally climb ramps and stairs, occasionally crouch, crawl, stoop, and kneel; and frequently balance. [Plaintiff] can never climb [ ] ladders, ropers or scaffolds; and can have no exposure to unprotected heights or moving mechanical parts. Further, [Plaintiff] is unable to operat[e] a motor vehicle or anything requiring the use of foot controls.

AR 26.

To develop Plaintiff's RFC, the ALJ relied on two principal grounds. First, the ALJ found that Plaintiff was not credible, which Plaintiff does not challenge on appeal. AR 26. As support for her RFC determination, the ALJ determined that "the medical evidence fails to

---

[5] Listing 14.09 is for inflammatory arthritis, which is defined generally, and then contains enumerated disorders for inflammatory arthritis involving the axial spine and for inflammatory arthritis involving the peripheral joints. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, part A2, § 14.00(D)(6)(a), (b), and (c). Listing 14.09 also discusses what type of documentation shows a diagnosis of inflammatory arthritis, as well as how the Administrative Law Judge is to evaluate it under the listings. *Id.* at §14.00(D)(6)(d) and (e). Specifically, listing-level severity for inflammatory arthritis, including rheumatoid arthritis, "is shown by an impairment that results in an 'extreme' (very serious) limitation. In 14.09A, the criterion is satisfied with persistent inflammation or deformity in one major peripheral weight-bearing joint resulting in the inability to ambulate effectively (as defined in 14.00C6) or one major peripheral joint in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7). In 14.09C1, if you have the required ankylosis (fixation) of your cervical or dorsolumbar spine, we will find that you have an extreme limitation in your ability to see in front of you, above you, and to the side. Therefore, inability to ambulate effectively is implicit in 14.09C1, even though you might not require bilateral upper limb assistance." *Id.* at §14.00(D)(6)(e)(i). Section 14.09 also states that "[l]isting-level severity is shown in 14.09B, 14.09C2, and 14.09D by inflammatory arthritis that involves various combinations of complications of one or more major peripheral joints or other joints, such as inflammation or deformity, extra-articular features, repeated manifestations, and constitutional symptoms or signs." *Id.* at §14.00(D)(6)(e)(ii).

support [Plaintiff's] allegation of disabling symptoms and limitations. The record reflects that [Plaintiff] has continuously received medical treatment for his alleged disabling conditions since his alleged onset of disability, which has worked generally well to relieve his symptoms." AR 29.

Second, the ALJ accorded little weight to the opinion of Dr. Satyan Shah, M.D., Plaintiff's treating urologist; very little weight to the opinion of Certified Nurse Practitioner Leona Herrell, Plaintiff's primary care provider; and little weight to the opinion of Dr. John Franco, M.D., Plaintiff's treating orthopedic surgeon. AR 31-32. The ALJ instead primarily relied on the opinions of Dr. Jeffrey Glassheim, D.O., the non-treating consultative examiner; and Dr. Janice Kando, M.D. and Dr. Lawrence Kuo, M.D., the non-examining state agency medical consultants, in determining Plaintiff's RFC. AR 31. The ALJ assigned significant weight to their opinions. AR 31.

### A. Opinion Evidence

The ALJ considered six medical opinions, and the absence of a seventh from Plaintiff's oncologist, Dr. Thomas Schroeder, to determine Plaintiff's RFC. Because the Court is remanding this case based on the ALJ's evaluation of Dr. Franco's opinion, however, the Court will not review the other medical opinions at issue in this case.

*Dr. John Franco, M.D.*

Dr. John Franco is an orthopedic surgeon who has treated Plaintiff since October 2014. Pl.'s Mot. 10; AR 357. During Plaintiff's first appointment with Dr. Franco, Dr. Franco noted that Plaintiff suffered from mild to moderate bilateral knee osteoarthritis. AR 359. During that same appointment, Plaintiff reported his pain level as a three out of ten, with ten being the most severe. AR 357. In November 2014, Plaintiff's pain level had improved to a one, but Dr. Franco

7

did not change his diagnosis of bilateral knee osteoarthritis. AR 355-56. During Plaintiff's next appointment in March 2015, Plaintiff reported that his pain level was eight out of ten. AR 360. Dr. Franco suspected a right knee medial meniscus tear, in addition to the bilateral knee osteoarthritis, and recommended a Magnetic Resonance Imaging ("MRI") scan to rule out a possible meniscus tear. AR 361. In May 2015, an x-ray confirmed the presence of osteoarthritis in Plaintiff's knees, which was more pronounced in the left knee. AR 394. A MRI done on September 3, 2015, confirmed a right knee medial meniscus tear. AR 427. The MRI also showed moderate and severe chondromalacia in different areas of Plaintiff's right knee. AR 424. During a September 15, 2015, appointment with Dr. Franco, Plaintiff reported that his current pain level was seven out of ten. AR 423. During that same appointment, Dr. Franco recommended that Plaintiff undergo a right knee arthroscopy for partial medial meniscectomy due to Plaintiff's mechanical symptoms, chronic inflammation, and pain. AR 424.

Dr. Franco performed surgery on September 30, 2015. AR 417. Surgical findings confirmed that Plaintiff suffered from chondromalacia of the trochlear groove of the knee and an acute tear of the posterior horn medial meniscus, both in his right knee. AR 417. During surgery, Dr. Franco debrided the torn portion of the medial meniscus and also performed a microfracture in light of his finding that Plaintiff had grade IV chondromalacia. AR 418. Plaintiff saw Dr. Franco on October 1, 2015 for a post-operative appointment. AR 433. During this appointment, Dr. Franco found that Plaintiff should permanently avoid flexion type activity due to the severe arthritis in the trochanteric groove of Plaintiff's right knee, which "would eliminate his ability to perform electrical type work or manual labor in the future." AR 434. Dr. Franco's post-operative diagnosis confirmed Plaintiff's arthritis. AR 417.

On October 26, 2015, Dr. Franco evaluated Plaintiff's functional capacity and completed an assessment. AR 453. In relevant part, Dr. Franco opined that Plaintiff could sit for six hours total each day, stand for one hour total in a day, and walk for one hour total in a day. AR 455. Dr. Franco also opined that Plaintiff required hourly rest breaks of ten to fifteen minutes each throughout an eight-hour day, but did not explain why. AR 454. Dr. Franco explained that he was basing his opinion on surgical findings from a right knee arthroscopy he performed on September 30, 2015. AR 453. Ultimately, Dr. Franco concluded that Plaintiff's condition had been consistently severe for twelve months, and he expected the condition to remain permanent. AR 457.

On January 12, 2016, Dr. Franco repeated his conclusion that Plaintiff suffered from bilateral knee osteoarthritis with underlying previous meniscus debridement, and stated that "[g]iven patient's severity of pain he is unable to bear weight for prolonged periods of time. I recommended avoiding any manual labor." AR 481. Dr. Franco's opinion was consistent with his conclusion on October 1, 2015, that Plaintiff should avoid manual labor. *See* AR 434. Dr. Franco's January 2016 opinion was also consistent with his functional assessment of Plaintiff in October 2015, which stated that Plaintiff can sit for six hours per day, stand for one hour per day, and walk for one hour per day. *See* AR 455.

The ALJ assigned little weight to Dr. Franco's October 26, 2015 opinion. AR 32. The ALJ did so because "it was done following surgery and he placed no limits on when the claimant's condition will improve." AR 32. The ALJ elaborated earlier in her opinion on the weight she assigned Dr. Franco's opinion, stating, "To the extent that [Plaintiff] is more impaired than set forth in the residual functional capacity as a result of the arthroscopic surgery he underwent on his right knee on September 30, 2015, nothing in the medical evidence of record

9

supports a finding that this level of impairment will last, or is expected to last, for a period of twelve months. In this regard, I do not give much weight to Dr. Franco's opinion dated October 26, 2015, approximately four weeks post-surgery, that [Plaintiff's] level of functioning at that time was permanent." AR 30.

In discussing the effect of Plaintiff's knee pain on his ability to work, the ALJ wrote, "[t]o the extent that [Plaintiff] alleges that he is unable to work due to his knees, I note that the medical evidence of record demonstrates that [Plaintiff] was able to ambulate with a normal gait and no assistive device after the alleged onset date." AR 30 (citing Ex. 1F at 10 (AR 294)). Exhibit 1F in the administrative record contains records from Valencia Family Health Care, which Plaintiff visited for ongoing primary care. AR 285-305. Nothing in these records refers to Plaintiff having a normal gait. There are several references throughout the record to Plaintiff having a normal gait after February 1, 2015. *E.g.*, AR 361 (Plaintiff's March 3, 2015, appointment with Dr. Franco); AR 390 (Plaintiff's March 12, 2015, appointment with CNP Leona Herrell); AR 440 (Plaintiff's July 13, 2015, appointment with CNP Herrell); AR 424 (Plaintiff's September 15, 2015, appointment with Dr. Franco). There are also several references throughout the record to Plaintiff having an antalgic gait after February 1, 2015. *E.g.*, AR 443 (Plaintiff's April 15, 2015, appointment with CNP Herrell); AR 434 (Plaintiff's October 1, 2015, appointment with Dr. Franco); AR 437 (Plaintiff's October 13, 2015, appointment with CNP Herrell).

After reviewing the other medical opinions, as well as Plaintiff's self-reports of his activities of daily living and the third party function report from Plaintiff's wife, the ALJ proceeded to the second phase of step four and found that Plaintiff had past relevant work as an electrician. AR 30-32. In the third phase of step four, the VE testified that an individual with

Plaintiff's RFC would be incapable of performing any of Plaintiff's past relevant work. AR 32. As a consequence, the ALJ proceeded to step five.

At step five, the ALJ relied on the testimony of the VE to determine what jobs, if any, Plaintiff could still perform. AR 32-33. The VE testified that an individual with Plaintiff's RFC could perform the jobs of hand polisher, (Dictionary of Occupational Titles) ("DOT")[6] #709.687-010; assembler, small products, DOT #706.684-022; and mail clerk, DOT #209.687-026. AR 33. Based on that testimony, the ALJ concluded that "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 33. Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, from February 20, 2015 through February 16, 2016[7], and denied his claim. AR 33-34.

## V.  ANALYSIS

### A.  The ALJ's rejection of Dr. Franco's temporal restrictions was not supported by substantial evidence.

Plaintiff's Motion advances three allegations of error, but the Court need only address the first. Because this Court is remanding on the basis of the ALJ's evaluation of Dr. Franco's opinion, the Court does not need to address the other appellate issues raised by Plaintiff, nor must it address the ALJ's evaluation of other providers' medical opinions. Because the ALJ committed legal error and because her opinion is unsupported by substantial evidence, this Court must remand and reverse the ALJ's decision for both proper analysis and support.

---

[6] The DOT includes detailed descriptions of jobs (classified by their exertional and skill requirements) that exist in the national economy. 20 C.F.R. § 220.134 (2017). Regulations require the Commissioner to take administrative notice of job information provided by the DOT. 20 C.F.R. § 404.1566 (2017).

[7] Plaintiff was later found by the Social Security Administration to have been disabled starting on February 17, 2016. Pl.'s Mot, Ex. 1 at 1, ECF No 18. This Court was not provided with any information as to why the SSA found Plaintiff to be disabled beginning *the day after* the ALJ had found to the contrary. This sequence of events is, at the very least, highly unusual and the Court could have benefited from an explanation.

Plaintiff argues that the ALJ erroneously accorded little weight to Dr. Franco's opinion. Pl.'s Mot. at 9. Plaintiff asserts that there is no basis for the ALJ's conclusion that "nothing in the medical evidence of record supports a finding that this level of impairment will last, or is expected to last, for a period of twelve months[.]" *Id.* at 10 (quoting AR 30). Plaintiff accurately points out that Dr. Franco expected Plaintiff's condition to be permanent, which is at odds with the ALJ's conclusion otherwise. *See* Pl.'s Mot. 10; AR 457.

The Commissioner repeats the ALJ's conclusion that Dr. Franco's opinion was entitled to little weight because it was rendered only four weeks after Plaintiff's right knee arthroscopy and "did not account for the likelihood that his knee condition would improve post-surgery." Def.'s Resp. 11, ECF No. 21. The Commissioner also repeats the ALJ's erroneous characterization of the record that nothing indicated that Plaintiff's impairment would last for twelve months or longer, and then attempts to defend that position by noting that "the record does not contain any clinical findings by Dr. Franco that suggest that Plaintiff's functional abilities would not improve after undergoing right knee surgery[.]" *Id.* Indeed, Dr. Franco's opinion says literally the opposite, and was premised upon Plaintiff's bilateral knee osteoarthritis, which is a distinction that the ALJ and the Commissioner have failed to consider. *See* AR 434, 481.

The Commissioner argues that Dr. Franco stated four months after Plaintiff's surgery that he was "doing okay" without any noted abnormal physical examination findings, Def.'s Resp. 11, but cited to Dr. Shah's notes on January 12, 2016, that Plaintiff was "doing ok" and "[h]is urinary frequency and nocturia are manageable with ditropan." AR 477. Dr. Franco's notes for his appointment with Plaintiff on January 12, 2016 - which was approximately three and a half months after surgery - do not indicate that Plaintiff was "doing okay." Instead, Dr. Franco wrote that "[Plaintiff] returns for follow up today for his right knee pain [and] [r]ight knee medial

12

meniscus tear. His current pain level, on a scale from 0-10, is 7. He continues to have numbness, pain with activities, and instability. There was no relief of his symptoms despite trying physical therapy." AR 480. Dr. Franco continued, "Given patient's severity of pain he is unable to bear weight for prolonged periods of time. I recommended avoiding any manual labor." AR 480.

### B. The Treating Physician Rule

Under the treating physician rule, "the Commissioner will generally give greater weight to the opinions of sources of information who have treated the claimant than of those who have not." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citing *Langley*, 373 F.3d at 1119). *See* 20 C.F.R. § 404.1527(d)(2) (2017) (defining how the SSA uses medical source opinions, including treating sources, but reserving the final decision on residual functional capacity to the Commissioner).[8] In analyzing whether a treating source opinion is entitled to controlling weight, the ALJ must perform a two-step process. First, the ALJ considers whether the opinion: (1) is supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) is consistent with the other substantial evidence in the record. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2) and *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). "If the answer to both these questions is 'yes,' [the ALJ] must give the opinion controlling weight." *Id.* (citation omitted). If the opinion is deficient in either of these respects, however, it is not to be given controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

---

[8] 20 C.F.R. § 404.1527 set forth guidelines for the evaluation of opinion evidence for claims filed before March 27, 2017, as the instant claim was. For the evaluation of opinion evidence for claims filed on or after March 27, 2017, 20 C.F.R. § 404.1520c applies. The version of 20 C.F.R. § 404.1527(d)(2) that was in effect on the date that Plaintiff filed his claim is identical to the most recent version of that portion of the regulation.

If the opinion is not entitled to controlling weight, "the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Pisciotta*, 500 F.3d at 1077. This inquiry is governed by its own set of factors, which include:

> (1) the length of the treatment relationship and the frequency of examination;
>
> (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
>
> (3) the degree to which the physician's opinion is supported by relevant evidence;
>
> (4) consistency between the opinion and the record as a whole;
>
> (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
>
> (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quotation omitted). While an ALJ must consider these factors, she need not expressly discuss each of them in her opinion. *Oldham*, 509 F.3d at 1258; SSR 06-3p, 2006 WL 2329939, at *5 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case."). Rather, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330 (citing *Watkins,* 350 F.3d at 1300–01). Furthermore, the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham*, 509 F.3d at 1258. If this is not done, a remand is required. *Watkins*, 350 F.3d at 1300.

C.   The ALJ's Treating Physician Analysis

Here, the ALJ thoroughly reviewed Plaintiff's treating history with Dr. Franco and summarized Dr. Franco's findings. AR 28-29. The ALJ specifically noted Dr. Franco's opinion from October 1, 2015, that "[Plaintiff] should permanently avoid flexion-type work activity due to the *severe arthritis* in the trochanteric groove of the right knee, which would eliminate his ability to perform electrical type work or manual labor in the future." AR 29 (emphasis added). The ALJ considered Dr. Franco's temporal restrictions upon Plaintiff's functional capacity, noting that Dr. Franco found that Plaintiff was limited to sitting for two hours at one time and six hours in a day, standing for one hour at a time and one hour in a day, and walking for one hour at a time and one hour per day. AR 29. The ALJ also discussed Dr. Franco's opinion from January 12, 2016, approximately three and a half months after Plaintiff's operation, that Plaintiff had "bilateral knee osteoarthritis with underlying previous meniscus debridement," and that "[g]iven the severity of the claimant's pain, Dr. Franco opined that the claimant is unable to bear weight for prolonged periods of time." AR 29.

Where the ALJ erred, however, was in failing to make findings with respect to the first step of the two-step process for evaluating whether to grant a treating physician's opinion controlling weight. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). Specifically, the ALJ failed to consider whether Dr. Franco's opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether the opinion was consistent with other substantial evidence in the record. Upon this Court's review, it appears that Dr. Franco's opinion was well-supported. After all, Dr. Franco cited to surgical findings to support his diagnosis of bilateral knee osteoarthritis and a right knee medial meniscus tear. AR 453. Plaintiff's x-ray imaging from May 2015 and his MRI from September 2015 confirmed the same

diagnoses. AR 394, 427. Thus, while the ALJ assigned little weight to Dr. Franco's opinion, she does not appear to have made either of the required step one findings to decide whether to assign controlling weight to Dr. Franco's opinion.

Perhaps more important, the ALJ also committed legal error by failing to explain why she rejected Dr. Franco's temporal restrictions on Plaintiff's functional capacity. The only explanation the ALJ gave with respect to the weight she assigned Dr. Franco's opinion was that it was rendered one month after Plaintiff's surgery, and did not allow for the possibility that Plaintiff would continue to recover. AR 30. The ALJ erroneously stated that there was nothing in the medical evidence of record that would support a finding that Plaintiff's level of impairment would last for twelve months or longer, even though Dr. Franco stated in his opinion that Plaintiff's condition would be permanent. AR 30; 457. Without expressly addressing the temporal restrictions set forth in Dr. Franco's opinion, the ALJ implicitly rejected them and relied on the non-treating physicians' opinions to conclude that Plaintiff was capable of "light work." AR 26-32. A job is included in the light work category when "it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2017). The ALJ's RFC stated that Plaintiff is unable to operate anything requiring the use of foot controls, which appears to eliminate a "light work" job that would involve sitting most of the time with some manipulation of leg controls. *See* AR 26. However, Dr. Franco was clear that Plaintiff could not bear weight for prolonged periods of time, even four months after surgery, and that he did not expect that condition to improve. AR 457, 481. The ALJ did not explain why she disregarded that portion of Dr. Franco's opinion and instead found that Plaintiff could stand or walk for six hours in an eight hour day.

This Court cannot discern why the ALJ rejected the temporal restrictions in Dr. Franco's opinion and, therefore, cannot perform meaningful judicial review. It appears that the ALJ discounted Dr. Franco's temporal restrictions because they were rendered too soon after he operated on Plaintiff's torn meniscus. *See* AR 30. But if that is what the ALJ did, then she appears to have confused the limited nature of the surgery with the broader scope of Dr. Franco's opinion. The surgery repaired (or at least sought to repair) only the torn meniscus. AR 417-19. The surgery did nothing to address, much less ameliorate, the causes, symptoms, and limitations associated with Plaintiff's bilateral osteoarthritis. AR 417-19. Dr. Franco's opinion following surgery was not restricted to the condition and functioning of Plaintiff's repaired meniscus, but also addressed the limitations caused by the arguably more serious condition of bilateral osteoarthritis. AR 455-57, 481. The ALJ's opinion does not appear to have appreciated this distinction.

The particular question to which Dr. Franco answered "Permanent" appeared on the last page of Exhibit 19F. AR 457. It read: "How long do you expect [Plaintiff's] condition to be at this severity?" The ALJ objected to this opinion because - at least in her view - Dr. Franco had not allowed sufficient time for the surgical repair to mature. *See* AR 30, 32. But it is worth repeating that Dr. Franco's opinion was broader than just the compromised meniscus. The very same exhibit made clear that Dr. Franco had diagnosed Plaintiff not just with a meniscus tear, but also with bilateral knee osteoarthritis. AR 453. Nothing about the surgery addressed the osteoarthritis, *see* AR 417-19, so it did not make any difference whether Dr. Franco waited four weeks or four years after surgery to render his opinion about the duration of Plaintiff's combined knee condition. This is a nuance the ALJ's opinion appears to have overlooked.

Last, the ALJ's reasoning for why she assigned little weight to Dr. Franco's opinion is not supported by substantial evidence. Although there is clear evidence in the record that Plaintiff's knee impairments were expected to be permanent [AR 453-57], which the ALJ acknowledged in her opinion [AR 29], the ALJ nonetheless found otherwise and used that finding to support her decision to grant little weight to Dr. Franco's opinion. AR 30. Her evaluation is not supported by substantial evidence.

Given the centrality of Plaintiff's knee condition to his overall disability application, and given the ALJ's failure to sufficiently justify and explain why she was rejecting the temporal restrictions in Dr. Franco's opinion as Plaintiff's treating physician, and given the ALJ's legal error in evaluating Dr. Franco's opinion, the Court concludes that remand is in order. On remand, the ALJ should specifically address Dr. Franco's opinion concerning Plaintiff's temporal restrictions. If the ALJ continues to disagree with that opinion, the ALJ should specifically explain why. If, however, the ALJ accords Dr. Franco's opinion about the temporal restrictions controlling deference and revises Plaintiff's RFC accordingly, the ALJ should then evaluate whether Plaintiff could have performed *sedentary* work during the period of disputed disability that is the subject matter of this particular appeal.

## VI. CONCLUSION

For the reasons articulated above, the Court concludes that the ALJ's analysis of Dr. Franco's opinion was not supported by substantial evidence and that the ALJ did not correctly apply the proper legal standards. Because proper consideration of Dr. Franco's opinion may render moot the other errors alleged by Plaintiff, the Court need not address them at this time.

**IT IS THEREFORE ORDERED** that Plaintiff's "Motion to Reverse or Remand the Administrative Decision" [ECF No. 19] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **REVERSED** and that the instant cause is **REMANDED** for further review consistent with this opinion**.**

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*